IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RHONDA ROWLETTE, a married woman,<br><br>    Plaintiff,<br><br>vs.<br><br>LISA FRANK, INC., an Arizona corporation,<br><br>    Defendant.<br>_____<br>LISA FRANK, INC., an Arizona corporation,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>JAMES A GREEN, a married man,<br><br>    Third-Party Defendant.<br>_____ | No. CV- 06-168-TUC-FRZ (BPV)<br><br>**REPORT AND RECOMMENDATION** |

    Currently pending before the Court is Plaintiff Rhonda Rowlette's motion to remand this case to the Arizona Superior Court for the County of Pima pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. On May 23, 2006, this case was referred to Magistrate Judge Velasco for all pretrial proceedings and report and recommendation. On April 12, 2006, Plaintiff filed her motion for remand (Doc. #9). Defendant filed its filed its response to the motion on May 8, 2006. Defendant filed a reply and the motion came before the Magistrate Judge for oral argument on June 29, 2006. For reasons which follow, the Magistrate Judge recommends that the District Court, after its independent review, GRANT Defendant's Motion for Remand.

**Procedural Background**

On March 13, 2006, an action was commenced in the Superior Court of the State of Arizona, in and for the County of Pima, entitled *Rhonda Rowlette v. Lisa Frank, Inc.*, under cause no. C20061405. (Complaint, Ex. "A") The complaint alleged four counts related to an employment agreement between the parties: Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Promissory Estoppel, and Failure to Pay Wages or Compensation.

On April 3, 2006, Defendant Lisa Frank, Inc., ("LFI") removed the action based on federal question jurisdiction, alleging that the Complaint was governed by the provisions of the Employee Retirement Income Security Act ("ERISA"), 28 US.C. § 1001-1461.

On April 4, 2006, LFI filed an Answer to the Complaint, along with a Counterclaim and a Third-Party Complaint against Third-Party Defendants James A. Green and Jerry Rowlette (Doc. # 4.) The Counterclaims and Third Party claims allege Conversion, Fraud Related to Computers, Accounting, Breach of Fiduciary Duty, Indemnity, Copyright, and Replevin against the Plaintiffs and Third Party Defendants.

The motion presently before the Court asserts that the alleged promises giving rise to Plaintiff's claims do not constitute an ERISA plan, and, thus, this case belongs in state court.

**Discussion**

Defendant's Position

It is Defendant LFI's position that Plaintiff Rhonda Rowlette's claim is that she was orally promised, while a LFI employee, a severance and/or retirement benefit that under certain circumstances would ensure Rowlette "$2 million in the bank" and her "home mortgage paid off." Defendant asserts that, while LFI denies the alleged oral promises, if they were in fact made, LFI has in place an ERISA qualified benefit plan and that numerous decisions have held that employer promises of severance pay, even

- 2 -

oral promises, are in the nature of an ERISA benefit and the state law claims are preempted by ERISA. Therefore, under ERISA's preemption provisions, Rowlette's state law claims for breach of contract, breach of covenant of good faith and fair dealing, and promissory estoppel are preempted by ERISA.

Plaintiff's Position

Plaintiff Rhonda Rowlette takes the position that controlling authority in the Ninth Circuit Court of Appeals has been ignored by the Defendant, and that, under that authority, this case has not been properly removed. Plaintiff Rhonda Rowlette argues that a mere decision to extend benefits does not establish a plan within the meaning of ERISA unless two basic requirements are met, the latter of which Defendant fails in this case: does the benefit package implicate an ongoing administrative scheme?

*Analysis*

1. Removal

Pursuant to 28 U.S.C. § 1441(b), any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. District courts have original jurisdiction of all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. With some exceptions, the district courts of the United States have exclusive jurisdiction of civil actions brought under the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132(e).

Whether removal is proper is governed by the "well-pleaded complaint" rule. If a federal question appears on the face of the plaintiff's complaint, the defendant may remove the case to federal court. If however, the defendant merely has a federal law defense, he may not remove the case, although he may assert the federal defense in state court. *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242 (3rd Cir. 2000) (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-12,

- 3 -

1  103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Louisville & Nashville R.R. Co. v. Mottley*, 211
2  U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)).

3        One exception to this rule is for matters that Congress has so completely
4  preempted that any civil complaint that falls within this category is necessarily federal
5  in character. Complete preemption creates removal jurisdiction even though no federal
6  question appears on the face of the plaintiff's complaint. A claim for denial of benefits
7  under an ERISA plan is one example of complete preemption. If two conditions are
8  met - 1) the state law claim "relates to" an ERISA plan within the meaning of §
9  1144(a)[1] and 2) falls within the scope of ERISA's civil enforcement found in § 1132(a)[2]
10 - the state claims are complete preempted by ERISA and converted to federal questions,
11 at least for the purposes of removal jurisdiction. *Toumajian v. Frailey*, 135 F.3d 648,
12 654, (9th Cir. 1998), *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987). If both
13 conditions are not met, however, the federal court does not have subject matter
14 jurisdiction and the matter should be remanded. *Id*. Only if the complaint asserts a
15 state law claim that can be reasonably characterized as a claim under any of ERISA's
16 civil enforcement provisions can the action be properly removed. *Id*.

17       The burden of establishing federal subject matter jurisdiction falls on the party
18 invoking removal. The existence of an ERISA plan is a question of fact, to be answered
19 in light of all surrounding circumstances from the point of view of a reasonable person.

---

[1]    In part, § 1144(a) provides for preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined by ERISA.

[2]    Section 1132(a) of ERISA, by its express terms, limits the causes of action that are available under the statute, as well as by whom and against whom they may be brought. For example, in what is the most common cause of action under ERISA, § 1132(a) authorizes a plan participant or beneficiary to bring a civil action to recover benefits due her under the plan to enforce her rights under the plan or clarify her rights to future benefits under the terms of the plan. § 1132(a)(1)(B).

- 4 -

2. <u>Employee Benefit Plans</u>

The Employee Retirement Income Security Act of 1974 ("ERISA") preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . . " 29 U.S.C. § 1144(a). A severance benefit may be an "employee benefit plan" within the meaning of ERISA and, as such, ERISA may preempt Plaintiff's state law claims. *See* 29 U.S.C. § 1002(1)(B) (Defining an "employee welfare benefit plan" as a plan that pays, inter alia, benefits described in 29 U.S.C. § 186(c).)[3].

ERISA is implicated only with respect to benefits which require an ongoing administrative program to meet the employer's obligation. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, (1987). Therefore, the existence of an ongoing administrative scheme is the key to determining whether an arrangement is an employee welfare benefit plan subject to ERISA. Writing for the Court in *Halifax*, Justice Brennan notes that "[t]he words 'benefit' and 'plan' are used separately throughout ERISA, and nowhere in the statute are they treated as the equivalent of one another. Given the basic difference between a 'benefit' and a 'plan,' Congress' choice of language is significant in its pre-emption of only the latter." *Fort Halifix*, 107 S.Ct. at 2216.

In *Fort Halifax*, the Court held, in rejecting the defendant's argument that a statute requiring employers to provide one time severance payments to employees in the event of plant closing established nor required an employer to maintain an employee benefit plan, because the requirement of a "one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial

---

[3] Although section 186(c) includes money paid by an employer to a trust fund to pay for severance benefits, section 1002(1)(B) has been construed to include severance benefits paid out of general asserts, as well as out of a trust fund. See *Fort Halifax Packing Co. v. Coyne*, 107 S.Ct. 2211, 2215, n.5, 482 U.S. 1, (1987).

- 5 -

1 coordination and control. Rather, the employer's obligation is predicated on the
2 occurrence of a single contingency that may never materialize. ... To the extent that the
3 obligation to do so arises, satisfaction of that duty involves only making a single set of
4 payment to employees at the time the plant closes. To do little more than write a check
5 hardly constitutes the operation of a benefit plan. Once this single event is over, the
6 employer has no further responsibility. The theoretical possibility of a one-time
7 obligation in the future simply creates no need for an ongoing administrative program
8 for processing claims and paying benefits." *Id.*, at 2218.

9       Regarding the focus of the regulatory concerns of ERISA, the Court noted that
10 the focus of the statute is on "the administrative integrity of benefit plans–which
11 presumes that some type of administrative activity is taking place." *Id.*, at 2219
12 (citations omitted). Concerning the obligation at issue in *Fort Halifax*, the court noted,
13 [t]here is no occasion to determine whether a 'plan' is 'operated' in the interest of its
14 beneficiaries, because nothing is 'operated.' No financial transactions take place that
15 would be listed in an annual report, and no further information regarding the terms of
16 the severance pay obligation is needed because the statute itself makes these terms
17 clear. It would make no sense for pre-emption to clear the way for exclusive federal
18 regulation, for there would be nothing to regulate. Under such circumstances, pre-
19 emption would in no way serve the overall purpose of ERISA." *Id.,* at 2220.

20       Thus, the Court in *Fort Halifax* concluded that the ERISA pre-emption analysis
21 "must be guided by respect for the separate spheres of governmental authority preserved
22 in our federalist system" and the argument that ERISA pre-empts state laws relating to
23 certain employee benefits, rather than to employee benefit *plans* is refuted by the
24 express language of the statue, the purposes of the pre-emption provision, and the
25 regulatory focus of ERISA as a whole. *Id.*, at 2221 (citations omitted).

26       In this case, Defendant offers the following as evidence of a benefit plan:

27

28

- 6 -

1) Plaintiff's Complaint at Paragraph 8: "After she had been employed with Defendant for approximately one (1) month, Plaintiff received an offer from another company that included a salary almost twice that she was earning at Defendant. Lisa Frank, on behalf of the Company offered to match the other company's offer, but made Plaintiff promise at that time that she would never leave the employ of Defendant until she retired. Plaintiff and Lisa Frank discussed the lack of a Company retirement plan, that she would "take care" of Plaintiff far in excess of any other company's retirement benefits."

2) Plaintiff's Complaint at Paragraph 12: "On numerous occasions, both Lisa Frank and James Green specifically promised Plaintiff, that when Plaintiff retired or was terminated from the Company, or when the Company was sold, Plaintiff would be paid an amount sufficient to ensure her $2,000,000.00 in the bank and her home mortgage paid off."

3) Plaintiff's Complaint at Paragraph 16: "Lisa Frank, on behalf of the Company, had a policy and practice of promising (and sometimes paying) large sums of monies to persons who were either employed or associated with Defendant."

The Court finds that this is insufficient evidence to demonstrate that Defendant Lisa Frank's alleged promises demonstrate an ongoing benefit plan within the meaning of ERISA. More importantly, Defendant has alleged no ongoing administrative scheme.

Defendant cites to *Bogue v. Ampex Corp*, 976 F.2d 1319 (9th Cir. 1992), in support of its position that even if a plan's application is uncertain, its term is short and the number of participants is small, if the programs administration requires a case-by-case, discretionary application of its terms, it applies enough ongoing, particularized, administrative, discretionary analysis to make it an ERISA plan.

Defendant's reliance on *Bogue* is misplaced. In *Bogue*, the Ninth Circuit adopted the reasoning of the Fifth circuit which described the "fence between cases involving

- 7 -

1  real ERISA plans and cases such as *Fort Halifax*." *Bogue*, 976 F.2d 1319 at 1323
2  (*citing Fontenot v. NL indus., Inc.*, 953 F.2d 960 (5th Cir. 1992)).  The Fifth Circuit in
3  *Fontenot* looked to whether the plan in question required an administrative scheme
4  because the circumstances of each employee's termination had to be analyzed in light
5  of certain criteria.  *Id*.  Adopting that approach, the court in *Bogue* determined that in
6  the case before it, the program's administrator remained obligated to decide whether a
7  complaining employee's job was "substantially equivalent" to his pre-acquisition job,
8  even though the program was triggered by a single event, there was no way to carry out
9  that obligation with the unthinking, one-time, nondiscretionary application of the plan
10 administrators as in *Fort Halifax*.  *Id*.

11       There is no equivalent determination here, nor is there the need for an "ongoing
12 administrative scheme."  Assuming Plaintiff's allegations to be true, at best, "when
13 Plaintiff retired or was terminated from the Company, or when the Company was sold"
14 a few simple accountings and calculations would be sufficient to determine what was
15 due her pursuant to the promises made.

16       While there are numerous cases cited by Plaintiff that this Court finds persuasive
17 and supportive of Plaintiff's position, including *Velarde v. PACE Membership*
18 *Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir 1917), and *Delaye v. Agripac, Inc.*, 39
19 F.3d 235 (9th Cir. 1994), this Court finds that there is little need to extend the analysis
20 beyond Justice Brennan's critical distinction in *Fort Halifax*.  Defendant simply cannot
21 demonstrate that what is at issue here is more than a mere benefit, there is no plan.

22       Defendant alleges that Plaintiff's complaint, paragraph 16 alleges that Defendant
23 Lisa Frank had a "policy and practice" of making severance payments to employees,
24 and, that a necessary conclusion of this allegation is that such payments are part of an
25 ongoing administrative scheme.  This statement overreaches.  Paragraph 16 of the
26 Complaint states that "Lisa Frank, on behalf of the Company, had a policy and practice
27 of promising (and sometimes paying) large sums of monies to persons who were either
28

1   employed or associated with Defendant" This is not equivalent to stating that Lisa
2   Frank had a policy and practice of promising and sometimes paying severance benefits.
3   Furthermore, even if it were equivalent, it would not be conclusive as to an "ongoing
4   administrative scheme."

*Sanctions - Attorney's Fees*

Finally, Defendant moves for attorneys fees as sanctions on Defendants for their improvident and unsupported removal.

Rule 11 provides for the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose. *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir.1994) *citing Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir.1992); *Operating Engineers Pension Trust v. A-C Company*, 859 F.2d 1336, 1344 (9th Cir.1988).

In considering a Rule 11 motion, a district court must find whether a violation in fact has taken place. *Warren*, 29 F.3d at 1389. A motion for sanctions under Rule 11, however, must be made separately from other motions or requests. Fed.R.Civ.P. 11(c)(a)(A). No such motion for sanctions was filed by Plaintiff.

Accordingly, this Court recommends that the District Judge, DENY Defendants motion for sanctions.

...
...
...
...
...
...
...
...
...

**Recommendation**

This Court recommends that Defendants' Motion for Remand (Document #9) be GRANTED.

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. **If objections are filed, the parties should use the following case number: CIV 06-0168-TUC-FRZ**.

DATED this 20th day of September, 2006.

_____
Bernardo P. Velasco
United States Magistrate Judge